UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARY JO PRATT,<br><br>                               Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                               Defendant. | No. C07-950Z<br><br>ORDER |

This matter comes before the Court on appeal from a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying plaintiff Mary Jo Pratt's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. 42 U.S.C. §§ 401-433. Having considered the briefs in support of and in opposition to the appeal as well as the appellate record, the Court REVERSES and REMANDS and enters the following Order.

**BACKGROUND**

Ms. Pratt worked from September, 1969, to December, 2000, for Qwest Communications as an administrative assistant/technician. AR 69. Ms. Pratt's duties

ORDER - 1

included clerical duties such as filing and mail handling, as well as more administrative duties such as payroll and data input. AR 70, 76. Ms. Pratt reported her job required her to walk two hours, stand two hours and sit four hours per day. AR 70, 350.

Ms. Pratt began having balance problems and in 1984 was diagnosed with Meniere's disease by her treating physician, Dr. Wong. AR 138. Ms. Pratt alleges disability beginning on February 1, 2004, as a result of worsening symptoms. AR 77. Ms. Pratt's symptoms in March, 2004, include dizziness with vertigo and hearing loss. AR 229. On June 4, 2004, Ms. Pratt's treating physician, Dr. Wong, determined that medical therapy had not been effective in controlling the Meniere's disease and performed an intratympanic injection with Gentamicin. The injection initially resulted in a worsening of some of her symptoms, but by June 25, 2004, Dr. Wong's notes indicate that Ms. Pratt's balance and hearing had improved. AR 216. On July 1, 2004, Dr. Wong recommended physical therapy as the next step in treating Ms. Pratt. AR 212. By August 2, 2005, Ms. Pratt had improved her balance through physical therapy and her hearing had improved as well. AR 163. Dr. Wong noted, however, that the disease was "still quite incapacitating to the patient." Id.

Ms. Pratt applied for Disability Insurance Benefits on July 20, 2005. AR 57-61. She was denied benefits and the decision was upheld on reconsideration. AR 26-28, 34-35. Ms. Pratt requested a hearing and appeared before Administrative Law Judge ("ALJ") Arthur Joyner on October 5, 2006. AR 334-58. The ALJ issued a decision denying Ms. Pratt's application on October 27, 2006. Ms. Pratt requested a review of the ALJ's decision by the Appeals Council and the request was denied. AR 5-8.

**Discussion**

**A.     Standard of Review**

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4). Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b); *see also* 20 C.F.R. § 404.1572 (defining substantial gainful activity as significant physical or mental activities done or usually done for pay or profit). If so, the claimant is not entitled to disability benefits, and no further evaluative steps are required. Step two asks whether the claimant has a severe impairment, or a combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not entitled to disability benefits, and again, additional analysis is not required. Step three involves a determination of whether any of claimant's severe impairments is equivalent to one that is listed in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant with an impairment that "meets or equals" a listed impairment for the requisite twelve-month duration is per se disabled and qualifies for benefits.

If the claimant is not per se disabled, then the question under step four is whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e) & (f) and 416.920(e) & (f). If the claimant can still perform past relevant work, then the claimant is not entitled to disability benefits and the inquiry ends there. On the other hand, if the opposite conclusion is reached, the burden shifts to the

ORDER - 3

Commissioner at step five to prove that the claimant can make an adjustment to other work, taking into account the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(g) & 416.920(g). If the claimant cannot make such adjustment to other work, disability benefits may be awarded.

This Court's review of a decision reached via this five-step process is limited to assessing whether the Commissioner's denial of benefits is free of legal error and based on factual findings that are supported by substantial evidence. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998); *see* 42 U.S.C. § 405(g). Substantial evidence means more than a mere scintilla but less than a preponderance of evidence; it is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). If the evidence reasonably supports both affirming and reversing the denial of benefits, the Court may not substitute its judgment for that of the Commissioner. *Reddick*, 157 F.3d at 720; *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if "the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld").

**B.      Issues on Appeal**

**1. Did Ms. Pratt Meet Listing 2.07?**

The first issue on appeal is whether the ALJ erred when he found that Ms. Pratt's condition did not meet or equal medical listing 2.07. The ALJ will find a person disabled if their condition meets or equals a listed impairment, regardless of the person's age, education, or work experience, also known as "per se disabled." 20 C.F.R. § 404.1520(d). Meniere's disease is a listed impairment:

ORDER - 4

> "Ménière's disease is characterized by paroxysmal attacks of vertigo, tinnitus, and fluctuating hearing loss. Remissions are unpredictable and irregular, but may be longlasting; hence, the severity of impairment is best determined after prolonged observation and serial reexaminations."

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.00 B.2.

> "2.07 Disturbance of labyrinthine-vestibular function (including Ménière's disease), characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing. With both A and B:
> A. Disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and
> B. Hearing loss established by audiometry."

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.07.

Ms. Pratt bears the burden of producing medical evidence that establishes all of the requisite medical findings. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). Simply because Ms. Pratt was diagnosed with Meniere's does not mean she meets listing 2.07. 20 C.F.R. § 404.1525(d).

Ms. Pratt argues that her condition met listing 2.07, and that the ALJ erred by finding her condition did not meet any listing without making any particularized findings. The ALJ's finding that Ms. Pratt did not have an impairment that met or equaled one of the listed impairments was supported with only two sentences.

> "It is significant to note that none of the treating, reviewing, or examining medical providers concluded that the claimant's impairments met or equaled any of the listed impairments. I have considered all of the listing of Appendix 1, but find that the claimant's impairments do not meet or equal the criteria of any listed impairment."

AR 20.

Ms. Pratt put forth substantial evidence that her impairments, as a result of Meniere's disease, met listing 2.07. Ms. Pratt's treating physician, Dr. Wong, recorded vestibular dysfunction demonstrated by caloric tests and fluctuating hearing loss. AR 163, 190, 194,

ORDER - 5

204, 229, etc. Although the ALJ does not discuss why Ms. Pratt did not meet listing 2.07, a reviewing physician indicated lack of progressive hearing loss as a reason why Ms. Pratt could not use listing 2.07.[1] AR 294. The requirement that the hearing loss be progressive is not firmly established by the listing, and indeed the listing seems to be somewhat self contradictory by characterizing the hearing loss as fluctuating, and then requiring in one portion progressive hearing loss, and in another only hearing loss established by audiometery. Compare 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.00 B.2., and 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.07 (both quoted above).

Ms. Pratt's hearing and other symptoms improved after the injection of Gentamicin, however the disease is characterized by fluctuating hearing loss and unpredictable remissions. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.00 B.2. The ALJ's lack of rationale for finding that Ms. Pratt's impairment did not meet or equal any listing taken with the evidence she produced indicating that her impairment met the listing including a fluctuating hearing loss, is contrary to the rule that "[a] boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not [meet or equal a listed impairment]." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). The Court REVERSES and REMANDS for a clarification of whether Ms. Pratt's impairment met or medically equaled a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.

**2. Could Ms. Pratt return to past relevant work?**

---

[1] "Can't use listing due to lack of progressive hearing loss. . . Dr. Merrill." AR 294.

ORDER - 6

At step four, the ALJ determined that Ms. Pratt retained the residual functional capacity to do certain things such as lift ten pounds frequently. Most notably, the ALJ found that Ms. Pratt could "stand and/or walk two hours in an eight hour workday; sit six hours in an eight hour work day." AR 20. The ALJ determined that Ms. Pratt's previous past relevant work was as an administrative assistant. The ALJ found that Ms. Pratt had the ability, as of the date last insured, to work as an administrative assistant "as it was actually and generally performed." AR 22.

Ms. Pratt's work required her to stand for two hours and walk for two hours a day, for a total of four hours of standing and walking. AR 70. The Commissioner argues that the ALJ found that Ms. Pratt could both stand for two hours and walk for two hours a day, for a total of four hours of standing/walking. The record does not support the Commissioner's point of view. The ALJ adopted the State Agency opinion regarding residual functional capacity which found that Ms. Pratt could stand and/or walk for a total of at least two hours in an eight-hour day. AR 21-22; AR 283. It is also clear from the hypothetical questions that the ALJ posed to the vocational expert that the ALJ intended to find that Ms. Pratt could walk and/or stand for a total of two hours in an eight hour work day. AR 355-56. Given the ALJ's finding that Ms. Pratt could only stand and/or walk for two hours a day and all of the descriptions of Ms. Pratt's previous relevant work experience indicate that her job required her to stand and/or walk four hours a day, the Court finds it was clear error to find that Ms. Pratt could perform her past relevant work as actually performed.[2]

---

[2] The Commissioner argues that this is harmless error because Ms. Pratt acknowledges that her past work was sedentary which is defined as standing and/or walking less than two hours a day in an eight hour day. Ms. Pratt conceded that an administrative assistant's job is sedentary, but argues that her job was not a simple administrative assistant precisely because her job was not sedentary. Because the error was material to whether her past relevant work was sedentary or not, it was not harmless.

ORDER - 7

In addition to the erroneous holding that Ms. Pratt could perform her past relevant work "as actually performed," the ALJ also found that Ms. Pratt could perform her past relevant work generally as an administrative assistant. "The Dictionary of Occupational Titles (DOT) descriptions can be relied upon--for jobs that are listed in the DOT -- to define the job as it is usually performed in the national economy." Soc. Sec. Ruling 82-61. A claimant will be found to be not disabled if the claimant is able to perform the actual duties of a particular past relevant job or the functional demands and duties of the occupation as generally required in the national economy. Id.

Ms. Pratt concedes that under the ALJ's determination of her residual functional capacity, she could work as an administrative assistant as defined in the DOT and practiced in the national economy; however Ms. Pratt contends that her past relevant work was not as an administrative assistant but instead was a composite job which included elements of administrative assistant and office clerk. An administrative assistant position is classified as exertionallyسedentary and an office clerk job is classified as exertionally light. See 20 C.F.R. § 404.1567(b) (classifying jobs which require walking or standing only occasionally as sedentary, and classifying jobs which require a good deal of walking or standing as light).

Jobs as actually performed may require somewhat more or less exertion than the DOT requires, and a claimant who can perform the less-exertional duties as described in the DOT will be found to be "not disabled" even if she is unable to perform the job as actually required in her past relevant work. Id. On the other hand, the Ninth Circuit has cautioned that the classification of a job according to its least demanding aspects is contrary to the

letter and spirit of the Social Security Act. <u>Valencia v. Heckler</u>, 741 F.2d 1082, 1086 (9th Cir. 1985).

The ALJ in this case relied on the vocational expert's testimony that Ms. Pratt had past relevant work experience as an administrative assistant. AR 22. But the vocational expert's testimony was equivocal, stating "[h]er job was a little different than most, but I think it falls more closely under the description of an administrative assistant in the DOT, so I'm going to go with that." AR 355. The vocational expert testified further that a person with the residual functional capacities that the ALJ ultimately found would allow Ms. Pratt to work as an administrative assistant because such work was sedentary. AR 355-56.

The Court concludes that the ALJ erred when he ignored the aspects of Ms. Pratt's job that were not part of the administrative assistant job title because it is those particular duties which make the office clerk job a light job and the lack of those duties which make the administrative assistant job a sedentary job. The Court REVERSES the ALJ's decision and finds that Ms. Pratt cannot perform her past relevant work experience as she actually performed it.

**3. Did the ALJ properly reject Ms. Pratt's testimony?**

The ALJ rejected portions of Ms. Pratt's testimony regarding the severity of her symptoms.

> "After considering the evidence of record, I find that the claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."

AR 20.

ORDER - 9

The ALJ noted improvement in her condition as documented in the medical records as the reason he rejected Ms. Pratt's testimony concerning the severity of her symptoms. Id. The ALJ did not make any determination regarding Ms. Pratt's general credibility or cite general lack of credibility as a factor in his decision to reject Ms. Pratt's testimony. Id.

Once a claimant has produced medical evidence of an underlying impairment, an ALJ may not reject the claimant's testimony merely because they are unsupported by objective evidence. <u>Lester v. Carter</u>, 81 F.3d 821, 834 (9th Cir. 1995). In the absence of evidence of malingering, the ALJ must accept the claimant's testimony unless there are clear and convincing reasons not to. Id. A claimant's testimony that a symptom is more disabling that would normally be expected is not itself a reason to discount the claimant's testimony. <u>Swenson v. Sullivan</u>, 876 F.2d 683, 687 (9th Cir. 1989). On the other hand, if the ALJ's credibility finding is supported by substantial evidence in the record, a court may not second-guess that finding. <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959, (9th Cir. 2002).

The sole basis the ALJ used to reject Ms. Pratt's testimony was the improvement in her condition as set forth by Ms. Pratt, her treating physician Dr. Wong, and the reviewing State Agency physicians. Ms. Pratt argues that the documented improvement in her condition was not a clear and convincing reason to reject her testimony, while the Commissioner argues the opposite. The ALJ provided a detailed analysis of the various ways in which Ms. Pratt's improvement was documented, including the objective tests of her gait, ambulation, balance, and hearing loss. AR 20-22. The ALJ also notes that Ms. Pratt reported having 75-80% normal balance. The ALJ failed, however, to show how the improvement related to the relative disabling effects of Ms. Pratt's impairments. For

ORDER - 10

instance, there is no connection between Ms. Pratt's report of having 75-80% normal balance and the degree of disability that the lacking 20-25% of her balance would imply. Additionally Dr. Wong, Ms. Pratt's treating physician, wrote in his notes a year after Ms. Pratt reported feeling 75-80% normal balance "Right Meniere's disease, post-op injection with Gentamicin, hearing normal and some moderate residual dysfunction, *still quite incapacitating to the patient however*." AR 163 (emphasis added). The ALJ did not address how Ms. Pratt's improved condition lessened the disabling effects of the disease as she reported them and as her doctor confirmed. The ALJ's reasons for rejecting Ms. Pratt's testimony are not clear and convincing because the evidence that her condition was better than it had been prior to treatment did not contradict her testimony describing how disabling her current condition was, there is no evidence of malingering in the record, and her testimony was supported by her treating physician. The ALJ improperly rejected Ms. Pratt's testimony.

The ALJ questioned the vocational expert regarding jobs Ms. Pratt could perform if the ALJ credited Ms. Pratt's testimony.

"[ALJ]: . . . [I]f I take Claimant's testimony as fully credible, any jobs?

[Vocational Expert]: Well, the problems that she raised in her testimony I think are pretty serious. She – my notes will show she says on bad days she has to go slow, take longer, calling in sick, she mentioned that frequently, nausea, vomiting, inferring an abundance of breaks I'd say, having to lie down for two or three hours [. . .] and it would sound like absenteeism would be a problem. She certainly described that in the past to a significant degree, and well beyond what I think most employers would tolerate for any job frankly."

AR 357.

ORDER - 11

The vocational expert's testimony seems to establish that if Ms. Pratt's testimony were not rejected, he would have considered her unable to hold any job because of extensive absenteeism, however the vocational expert's testimony is not clear enough to be conclusive and require a finding that Ms. Pratt could not work at all. Ms. Pratt's attorney questioned the vocational expert to establish that an administrative assistant would only be allowed to be absent from work 15 days per year. AR 357. It is not clear that Ms. Pratt would be absent more than this amount, or that the same amount of absence would be tolerated in the composite job of administrative assistant/office clerk. Therefore, the Court REVERSES and REMANDS for further proceedings consistent with this order.

## CONCLUSION

The Court REVERSES the final decision of the Administrative Law Judge and the Appeals Council and REMANDS for further proceedings in accordance with this Order.

IT IS SO ORDERED.

DATED this 24th day of July, 2008.

Thomas S. Zilly
United States District Judge